# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1986 | **DATE** | 11/4/2004 |
| **CASE TITLE** | Trish Wiggen vs. Leggett & Platt | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: The Court GRANTS Leggett & Platt, Inc's Motion for Summary Judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 0 5 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 41 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
NOV 4 2004
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

TRISH WIGGEN,

    Plaintiff,

v.

LEGGETT & PLATT, INC.,

    Defendant.

Case No. 03 C 1986

Hon. Harry D. Leinenweber

**DOCKETED**
NOV 0 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Trish Wiggen (hereinafter "Wiggen") alleges that she was terminated by her employer Defendant Leggett & Platt (hereinafter "L&P") for disability discrimination and retaliation in violation of the Americans with Disabilities Act (the "ADA"). Before the Court is L&P's Motion for Summary Judgment, which is **GRANTED**.

### I. INTRODUCTION

Wiggen was employed by L&P's Batavia Branch from September 13, 1993 until she was terminated on August 31, 2001. Wiggen also attended DeVry University and devoted approximately 25 hours per week to her senior project. Presently and throughout her employment at L&P, Wiggen suffered from migraine (severe tension) headaches. See Def. SOF ¶¶ 119, 195. The migraine headaches generally occur once a month and typically last two to three days. See id. ¶¶ 124-125. Wiggen is self-sufficient and lives alone. She has no limitations on major life activities. Wiggen

41

occasionally has blackouts, feels nauseated, or dizzy when she has a headache. See id. ¶¶ 126-138.

In addition to migraine headaches, Wiggen also suffered from sinus headaches in 1998 and from June 2001 through April 2002. See id. ¶¶ 139-141, 151-152. Wiggen also had a growth in her tear duct which caused a fluid backup, adding pressure and aggravating the headaches. See id. ¶¶ 154, 156. During July and August 2001, Wiggen suffered from the combination of migraine and sinus headaches. During that time, Wiggen vomited on a daily basis and had nausea episodes and occasionally would pass out, or be unable to eat, walk, light a cigarette, or drive due to her headaches. See id. ¶¶ 161-62, 164-67. Despite her headaches, Wiggen continued to report to work and keep current with her school assignments. See id. ¶¶ 159-168.

### A. Confrontations and Disruptions

James Zaerr ("Zaerr"), the branch manager, and Tina Robinson ("Robinson"), the office manager, were Wiggen's supervisors at L&P. See id. ¶¶ 23-24, 30-33. Zaerr received numerous oral and written reports of Wiggen's misconduct. See id. ¶¶ 104-113; Zaerr Aff. ¶¶ 16-25, 34-39, 41, 43-45. Wiggen's working relationship with Robinson was inconsistent and marked by frequent conflict. See Def. SOF ¶¶ 42-43, 103. She had many confrontations with Robinson throughout July and August, which resulted in workplace disruptions. Most of the disagreements revolved around Wiggen's

salary and time cards. Robinson and other co-workers documented many of Wiggen's disruptions and confrontations in written and oral complaints to Zaerr. See id. ¶¶ 56-62, 66-67.

Problems continued despite a meeting between Zaerr, Robinson and Wiggen on August 10. On August 20, co-worker Stacie Lawhorn documented a customer complaint about Wiggen's phone etiquette. See id. ¶¶ 83-84. That same day, Wiggen wrote a memo to Zaerr complaining about Danzer's phone etiquette. See id. ¶¶ 85-86. On August 30, Wiggen argued with several L&P employees. Robinson related one such dispute to Zaerr in a memorandum. See id. ¶¶ 99-100. Wiggen also initiated a confrontation with co-worker Lloyd Awe, and Awe wrote a memorandum to Zaerr complaining about the manner in which Wiggen treated him. Robinson wrote a letter to Zaerr about the dispute. See id. ¶¶ 93-97.

**B. Wiggen's Medical and Discrimination-Related Complaints**

In July 2001, Wiggen informed Robinson that she was having severe migraines and was going to undergo testing. See id. ¶ 169. She did not complain of discrimination because of her headaches. On the same day, Wiggen wrote a letter to Jeff Hugey ("Hugey") at L&P's corporate office, in which she reported that on one occasion in July, Zaerr "informed [her] if [she] ever called [L&P] corporate [offices] for a problem again he would fire [her]." Def. Ex. N. In closing, Wiggen also stated that she "personally believe[s] that both Mr. Zaerr and Mrs. Robinson should be required to attend

classes that will inform them what includes harassment and discrimination on the job." Id. The remainder of the letter related to paycheck discrepancy complaints, and there was no mention of Wiggen's headaches.

On August 30, Wiggen wrote a second letter to Hugey, which she sent only to him. See id. ¶¶ 176-178; Def. Ex. A. For the first time, Wiggen referred to her medical condition, stating: "I am under a doctor's care for a growth (tumor) whatever you want to call it in my head which causes me to have horrible migraine headaches and pain which would make me sound tired, which I am due to lack of sleep which comes from much added stress from here." Def. Exhibit A. She did not complain of discrimination based upon her headaches. Also, on August 30, Wiggen informed Zaerr about her sinus and tear duct problems and the worsening of her headaches, as well as the surgeries she would need to relieve those problems. Id. ¶¶ 172-174. She did not complain of discrimination based upon her headaches.

Wiggen did not file a charge of discrimination until June 18, 2002, ten months after her termination from L&P. The charge alleges only that:

> On or around July 2001 I complained to Respondent about disability discrimination but to no avail. On August 30, 2001, I made Respondent aware of another medical condition that I had and also complained again to Respondent about disability discrimination. On August 31, 2001, I was discharged. I believe that I have been retaliated against due to my prior complaints of disability discrimination . . . "

- 4 -

### C. Termination

Zaerr decided to terminate Wiggen, after the "last straw" of the major disruption caused by the confrontation Wiggen initiated with Awe. Zaerr Aff. ¶¶ 38-39. On August 31, 2001, Zaerr terminated Wiggen for disruptions in the workplace and failure to get along with others. See Def. SOF ¶¶ 115. Zaerr relied upon the oral and written complaints regarding Wiggen's conduct, as well as his own personal observations of Wiggen's conduct. Id. ¶ 114. Zaerr contends he was not aware of Wiggen's letter to Hugey until after he had already decided to terminate Wiggen. See Zaerr Aff. ¶ 50. Wiggen purportedly "never complained to [Zaerr] of discrimination based on any health condition or alleged disability." Id. ¶ 52.

L&P also terminated eleven other employees between January 2000 and December 2001. See Def. SOF ¶ 198. None of those employees had a disability or medical condition nor had they complained about disability discrimination. Id. ¶¶ 197, 204. Two employees were terminated due to a reduction in work force, and two were terminated after a disciplinary process. The remaining employees were discharged for a variety of reasons, such as theft, lying, and inadequate performance. Id. ¶¶ 199-202.

## II. DISCUSSION

Wiggen claims that L&P discriminated in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.

and retaliated in violation of 42 U.S.C. § 12203. L&P moves for summary judgment on both claims. The summary judgment standard is well-established. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In this case, Wiggen is pro se, and thus her pleadings are liberally construed. See Greer v. Bd. of Ed. of City of Chicago, 267 F.3d 723, 727 (7th Cir. 2001). However, a pro se plaintiff is not excused from the procedural requirements of the court. See Members v. Paige, 140 F.3d 699, 702 (7th Cir. 1998). Wiggen's response fails to comply with Local Rule 56.1, of which L&P made Wiggen aware. In purporting to respond to L&P's statements of fact, Wiggen asserted numerous additional proposed "undisputed facts," without citing any evidence in support of such facts, most of which were "self-serving legal conclusions, rather than particularized statements of facts." Greer, 267 F.3d at 727. Accordingly, the Court strikes such responses. The Court is not "obliged in our adversary system to scour the record looking for factual disputes." Id. (quoting Waldridge v. American Hoechst Corp., 24 F.3d 918, 921-22 (7th Cir. 1993)). The Court reviews each of Wiggen's claims in turn.

### A. Disability Discrimination

There are two available methods for a plaintiff to prove disability discrimination under the ADA, 42 U.S.C. § 12112(a): the direct and indirect method. Buie v. Quad/Graphics, Inc., 366 F.3d

496, 503 (7th Cir. 2004)(citing Robin v. Espo Engineering Corp., 200 F.3d 1081, 1089 (7th Cir. 2000)). Under the direct method, a plaintiff must prove that the decision to terminate her was motivated by the impermissible purpose of disability. Robin, 200 F.3d at 1089 ("to survive a motion for summary judgment, [plaintiff] is required to present sufficient evidence to allow a rational jury to reasonably conclude that but for his age or disability, [defendant] would not have fired him"). This can be proven by direct and circumstantial evidence. Buie, 366 F.3d at 503 (citations omitted). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." Id. Conversely, circumstantial evidence would allow "a jury to infer intentional discrimination by the decision-maker." Id.

Because direct evidence is often difficult to procure, the Supreme Court established the burden-shifting approach set out in McDonnell Douglas Corp. v. Green as an indirect method of proving discrimination (the "McDonnell Douglas approach"). See 411 U.S. 792 (1973). To proceed under this method, the plaintiff must first establish a prima facie case of discrimination by showing that (1) she is disabled under the ADA; (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of her disability. Buie, 366 F.3d at 503; Dvorak v.

Mostardi Platt Assoc., Inc., 289 F.3d 479, 483 (7th Cir. 2002). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment action. Buie, 366 F.3d at 503. If the defendant meets the burden, the plaintiff must prove, by a preponderance of the evidence, that the defendant's proffered reasons were a pretext for intentional discrimination. Id. The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

A "disability" is defined under Section 12102 of the ADA as follows:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12101(2). Major life activities include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); see also Dvorak, 289 F.3d at 483. Wiggen contends that she is disabled because of her headaches. When suffering from a headache, Wiggen sometimes experiences blackouts or feels

nauseated or dizzy, or is unable to eat, walk, or drive due to the headache pain.

L&P responds that Wiggen is not "disabled" under the ADA because her headaches do not "substantially limit one or more of the major life activities" as defined under the ADA. A person is "substantially limited" in regard to daily life activities if, compared to the average person in the general population, she cannot perform or is limited in the manner in or extent to which she can perform one of the recognized activities. See 29 C.F.R. § 1630.2(j)(ii); Dvorak, 289 F.3d at 483. The nature and severity of the impairment, the duration of the impairment, and the permanent or long term impact of the impairment should be considered in making such determination. See id. § 1630.2(j)(ii)(2). The term "substantially" suggests "considerable" or "to a large degree," and "clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 185 (2002). Thus, to be "disabled" under the ADA, the plaintiff must offer evidence that their impairment is long-term or permanently "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id. at 198.

The Court finds no direct evidence of disability animus, and so it analyzes Wiggen's claim using the McDonnell Douglas approach.

See Greer, 267 F.3d at 728. Wiggen clearly has not presented evidence to show a "disability," and thus cannot satisfy the first prima facie element. Wiggen's headaches do not impair her major life activities or impact her daily activities. According to her own testimony, Wiggen's headaches are periodic and temporary and therefore do not constitute a long term or permanent impairment. She lives alone and has no limitations on caring for herself. Further, even during the few days per month she has a headache, Wiggen faithfully attends her full time job and continues to devote time to her studies without interruption. Wiggen also fails to show that L&P regarded her as having an impairment that substantially limited her major life activities. See 42 U.S.C. § 12102(2)(C). To the contrary, Zaerr specifically attested that he did not regard Wiggen as having any such impairment, and Wiggen provided no evidence to the contrary.

Wiggen has failed to establish a prima facie case of disability discrimination. Thus, summary judgment is required in favor of the L&P on the ADA discrimination claim, and the Court need not examine the remaining. The Court additionally notes that even if Wiggen had been successful in shifting the burden to L&P under the McDonnell Douglas approach, summary judgment would still be required in favor of L&P because it provided a legitimate, nondiscriminatory reason for the termination supported by ample documentation in the record. Wiggen failed to provide any evidence

to prove, by a preponderance of the evidence, that the proffered reason was a pretext for intentional discrimination. Buie, 366 F.3d at 503. For the foregoing reasons, the Court grants L&P's motion for summary judgment on the claim of disability discrimination.

## B. Retaliation Claim

Wiggen also alleges that L&P retaliated against her in violation of Section 12203 of the ADA. See 42 U.S.C. § 12203. Like discrimination, retaliation can be established by the direct or indirect method. Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 644 (7th Cir. 2002). Under the direct method, the plaintiff presents direct evidence "that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complaints." Id. The defendant is entitled to summary judgment if it presents unrebutted evidence that it would have terminated plaintiff even without a retaliatory motive. See id. To proceed under the McDonnell Douglas approach, the plaintiff must first establish a prima facie case by showing that after filing a charge of discrimination, she, unlike otherwise similarly situated employees, was subject to adverse action even though she was performing her job in a satisfactory manner. See id. at 644. "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment." Id.

L&P argues that Wiggen has failed to establish a prima facie case of retaliation for many reasons. First, she did not file a charge of disability discrimination or retaliation during her employment with L&P. Additionally, there is no evidence that she ever complained of discrimination based upon her headaches to anyone at L&P during her employment. Third, Wiggen did not present evidence that other similarly situated employees were treated differently. Fourth, L&P contends that she was not performing her job satisfactorily at the time of termination as evidenced by the multiple complaints regarding her disagreements with co-workers and the complaint from a customer. Further, L&P contends that the termination had nothing to do with any health condition Wiggen may have had or any alleged complaints of disability discrimination. See id. ¶ 183. Zaerr also argues that he was not even aware of Wiggen's second letter to Hugey until after he decided to terminate her, and denies regarding Wiggen's headaches as imposing any limitation on her major life activities or interfering with her ability to do her job. See id. ¶¶ 179, 196.

Wiggen responds that her termination was in response to her complaints to Zaerr and Hugey. Id. ¶¶ 194, 184. Wiggen testified that she understood the following documented interactions to be complaints of disability discrimination: her comments to Robinson and Zaerr about her headaches and medical conditions in July and

August respectively, and her two letters to Hugey in August. See id. ¶¶ 171, 175, 177, 180.

As with the disability discrimination claim, the Court discerns no direct evidence that L&P terminated Wiggen in retaliation for complaints of disability discrimination. After an extensive review of record, the Court concludes that Wiggen has also failed to establish a prima facie case under the McDonnell Douglas approach. The evidence in the record does not support Wiggen's allegations that she complained of discrimination. To the contrary, Wiggen did not file a charge of retaliation or discrimination with the state or EEOC until ten months after her termination. Only the second letter to Hugey on even mentions her headaches, and such letter discusses office grievances, not discrimination. The first letter to Hugey does not mention Wiggen's medical issues at all, and briefly mentions retaliation but not in the context of complaints regarding her headaches or medical issues. Further, Wiggen's communications with Zaerr and Robinson do not allege discrimination in connection with her headaches or retaliation.

Additionally, Wiggen has failed to present evidence that other similarly situated employees were treated differently. Zaerr indicated that he terminated eleven other employees over a two-year period surrounding Wiggen's termination. Of these employees, none had a disability or medical condition, and none complained about

disability discrimination. Although Wiggen was the only employee terminated for the specific reason of not getting along well with others and causing office disruptions, seven other employees were terminated without undergoing a disciplinary process for various conduct-related reasons.

Additionally, Wiggen does not show that she performed her job satisfactorily. The record is replete with complaints regarding her conduct and supports fully L&P's contention that they terminated Wiggen for her failure to get along with others in the workplace. Wiggen has therefore not made a prima facie case of retaliation. Finally, L&P has presented a legitimate, non-discriminatory reason for Wiggen's termination, and Wiggen has not presented rebuttal evidence indicating that the proffered reason was pretext for discrimination. Therefore, the Court grants L&P's motion on Wiggen's retaliation claim.

### III. CONCLUSION

For the reasons stated herein, the Court GRANTS L&P's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: November 4, 2004